















JPP   3/22/05   15:24

3:05-CV-00171   GONZALES V. ARROW FINANCIAL

*7*

*OPPM.*

LAW OFFICE OF ELIZABETH J. ARLEO, PLC
ELIZABETH J. ARLEO (CASB NO. 201730)
10085 Carroll Canyon Road, Suite 210A
San Diego, CA 92131
Telephone: 858/547-9800
858/547-9880 (fax)

ROBERT L. ARLEO, ESQ (NYSB NO. 7506)
225 East 79th Street, 2B
New York, NY 10021
Telephone: 212-517-9967
212/517-2919 (fax)

Attorneys for Plaintiff

FILED

05 MAR 21  PH 3: 26

ORIGINAL          DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHNNY GONZALES, on Behalf of Himself and All Others Similarly Situated,<br><br>                  Plaintiff,<br><br>   vs.<br><br>ARROW FINANCIAL SERVICES LLC,<br><br>                  Defendant. | Case No. 05-CV-0171 JAH (RBB)<br><br>PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS<br><br>DATE: April 7, 2005<br>TIME: 3:00 pm<br>DEPT: F<br><br>Hon. John A. Houston |

7

1

## TABLE OF CONTENTS

2   I.      INTRODUCTION ....................................................................................................1

3   II.     THE FAIR DEBT COLLECTION PRACTICES ACT......................................................3

4   III.    MOTION TO DISMISS STANDARD................................................................................5

5   IV.     ARGUMENT.........................................................................................................6

6           A.    An Implied Threat is Actionable Under the FDCPA................................................6

7           B.    Arrow's Letters Are Deceptive and Misleading to the Hypothetical Least
                  Sophisticated Debtor, the Standard Is Lower Than Arrow Contends.....................8
8
            C.    Arrow's Added Language "And If We Are Reporting the Account" Does
9                 Not Preclude Liability in the Context of Promising to Report Any
                  Settlement of the Account to the Appropriate Credit Bureaus .............................14
10
            D.    The Letters are Actionable Because Arrow Failed to Individually Assess
11                Whether the Debt Was More Than Seven Years Old............................................17

12          E.    Arrow's Discussion of the Fair Credit Reporting Act and CCRAA is
                  Irrelevant and Misleading ....................................................................................19
13
    V.      CONCLUSION.......................................................................................................20
14
15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**CASES**

*Anderson v. Credit Collection Services, Inc.,*
   322 F. Supp.2d 1094 (S.D. Cal. 2004) .......................................................................... 12

*Baker v. G.C. Services Corp.,* 677 F.2d 775 (9th Cir. 1982) ........................................ 3, 6

*Beasley v. Collectors Training Inst. Inc.,*
   No. 98 C 8113, 1999 U.S. Dist. LEXIS 13275
   (N.D. Ill. Aug. 17, 1999)....................................................................................... 7

*Beattie v. D.M. Collections, Inc.,*
   754 F. Supp. 383 (D. Del. 1991) .......................................................................... 4

*Clomon v. Jackson,*
   988 F.2d 1314 (2d. Cir. 1993).............................................................................. 2

*Conley v. Gibson,*
   355 U.S. 41 (1957)................................................................................................ 5

*Davis v. Scherer,*
   468 U.S. 183 (1984).............................................................................................. 5

*Dutton v. Wolhar,*
   809 F.Supp. 1130 (D. Del. 1992)......................................................................... 7

*Freyermuth v. Credit Bureau Servs., Inc.,*
   248 F.3d 767 (8th Cir. 2001) ................................................................................ 6

*Gammon v. G.C. Servs. Partnership,*
   27 F.3d 1254 (7th Cir. 1994) .............................................................................. 7, 8

*Gompper v. VISX, Inc.,*
   298 F. 3d 893 (9th Cir. 2002) ............................................................................... 6

*Hishon v. King & Spalding,* 467 U.S. 69 (1984) ......................................................... 5

*Irwin v. Mascott,*
   112 F. Supp. 2d 937 (N.D.Cal. 2000) ..................................................... 3, 15, 17

*Irwin v. Mascott,*
   96 F.Supp. 2d 968 (N.D. Cal. 1999) ................................................................. 17

*Jang v. A.M. Miller & Assocs.,* 122 F.3d. 480 (7th Cir. 1997) ...................................... 19

*Kimber v. Federal Fin. Corp.,*
   668 F. Supp. 1480 (M.D. Ala. 1987) ................................................................. 12

*Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,*
   507 U.S. 163 (1993).............................................................................................. 5

*Lopez v. Smith,*
   203 F.3d 1122 (9th Cir. 2000) ............................................................................ 6

*Mace v. Van Ru Credit Corp.,*
   109 F.3d 338 (7th Cir. 1997) .............................................................................. 3

*Masuda v. Thomas Richards & Co.,*
   759 F. Supp. 1456 (C.D. Cal. 1991) ........................................................ 3, 4, 17, 18

*Maxwell v. Arrow Fin. Servs.,*
   No. 03 C 1995, 2004 U.S. Dist. LEXIS 5462
   (N.D. Ill. Mar. 31, 2004) ................................................................................... 13

*McCartney v. First City Bank,*
   970 F.2d 45 (5th Cir. 1992) ................................................................................. 3

*Morse v. Dun & Bradstreet, Inc.,*
   87 F.Supp.2d 901 (D. Minn. 2000) ..................................................................... 19

*Redd v. Arrow Fin. Servs.,*
   2004 U.S. Dist. LEXIS 5421
   (N. D. Ill. Mar. 31, 2004) ............................................................................. 13, 14

*Rivera v. Bank One,*
   145 F.R.D. 614 (D.P.R. 1993) ............................................................................. 8

*Scheuer v. Rhodes,*
   416 U.S. 232 (1974) ........................................................................................... 5

*Swanson v. Southern Ore. Credit Serv.,*
   869 F.2d 1222 (9th Cir. 1988) ...................................................................... 4, 7, 12

*Swierkiewicz v. Sorema N.A.,*
   534 U.S. 506 (2002) ........................................................................................... 5

*United States v. Nat'l Fin. Servs.,*
   98 F.3d 131 (4th Cir. 1996) ............................................................................... 7

*United States v. Redwood,*
   640 F.2d 963 (9th Cir. 1981) ............................................................................. 6

*Usher v. City of Los Angeles,*
   828 F.3d 556 (9th Cir. 1987) ............................................................................. 6

*Yamaguchi v. U. S. Dep't of the Air Force,*
   109 F.3d 1475 (9th Cir. 1997) ........................................................................... 6

**OTHER AUTHORITIES**

S. Rep. No. 382, 95th Cong., 1st Sess. 3 (1977), reprinted in 1977 USCCAN 1695,
   1697............................................................................................................... 3

**FEDERAL STATUTES**

15 U. S. C. §1692(10) .......................................................................................... 13

PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS
   - iii -
   05-CV-0171 JAH (RBB)

15 U.S.C. §1681 *et seq* ........................................................................................................... 9

15 U.S.C. §1681c(a)(4) ...................................................................................................... 9, 12

15 U.S.C. §1681c(c)(1) ........................................................................................................... 9

15 U.S.C. §1681s-2(a)(2) ...................................................................................................... 10

15 U.S.C. §1681s-2(a)(5) ...................................................................................................... 11

15 U.S.C. §1692d ..................................................................................................................... 3

15 U.S.C. §1692e ........................................................................................................... 2, 3, 13

15 U.S.C. §1692e(1) ................................................................................................................. 7

15 U.S.C. §1692e(10) ..................................................................................................... 2, 7, 13

15 U.S.C. §1692e(2) ............................................................................................................... 13

15 U.S.C. §1692e(5) ..................................................................................................... 2, 4, 6, 13

15 U.S.C. §1692f ...................................................................................................................... 3

15 U.S.C. §1692g ..................................................................................................................... 3

15 U.S.C. §1692k ..................................................................................................................... 3

15 U.S.C.§1692e(8) ............................................................................................................... 13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS

- iv -

05-CV-0171 JAH (RBB)

I.   **INTRODUCTION**

Plaintiff Johnny Gonzales ("Plaintiff"), by and through his counsel of record, hereby opposes Defendant's Motion to Dismiss. ("Def. Mem.") This action seeks redress for the illegal practices of defendant Arrow Financial Services LLC ("Defendant" or "Arrow"), in connection with the collection of debts, in violation of the Federal Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq.* ("FDCPA"). Plaintiff seeks to represent a class of California residents who received letters in the form represented by Exhibits A and B, attached to the Complaint.

Defendant contends that Plaintiff's claims "lacks [] seriousness." Def. Mem. at 3. This is a bold statement considering that a federal district court in Illinois denied Arrow's motions to dismiss similar claims involving Arrow's apparently frequent purchase of and attempts to enforce debts that were charged off more than seven years previously. Defendant's improper attack on Plaintiff as an "admitted debtor in default" grossly distorts Plaintiff's allegations. Defendant is well aware that the FDCPA protects consumers from unscrupulous debt collectors *regardless* of whether a valid debt exists. The FDCPA also provides for the recovery of statutory damages even without actual damages.

Arrow acts as a collection agency and also engages in the business of buying bad debts allegedly owed by consumers for a small fraction of face value and enforcing the debts against the consumers. ¶5.[1] Arrow is a "debt collector" as defined in the FDCPA. *Id.* Sometime in 1989 or 1990, Plaintiff joined a gym and for reasons which are irrelevant to this action, he subsequently did not pay the monthly fees. ¶11. On or about December 1992, the debt was charged off by Ballys. *Id.* The form letters mass mailed by Arrow sought to collect the debt incurred by Plaintiff for personal, family and/or household purposes. ¶10. On April 30, 2004 and July 8, 2004, some 12 years after the charge off date, Arrow sent Plaintiff letters demanding payment of the debt. ¶¶7-8. The letters are attached to the Complaint as Exhibits A and B.

---

[1] All "¶" and "¶¶" references refer to Plaintiff's Complaint for Violation of the Fair Debt Collection Practices Act (the "Complaint"). Although this is Plaintiff's original Complaint, Arrow erroneously refers to it as the "First Amended Complaint." Def. Mem. at 5. Unless otherwise noted, all emphasis is added and citations and internal quotations are omitted.

1   Each of the letters states that "[u]pon receipt of the settlement amount and clearance of

2 funds, and if we are reporting the account, the appropriate credit bureaus will be notified that this

3 account has been settled." ¶12. This is followed by another reference to credit bureau reporting. *Id.*

4 The reference to credit bureaus is misleading because under the Fair Credit Reporting Act

5 ("FCRA"), a credit bureau cannot report a debt charged off more than seven years previously and

6 Arrow's promise to notify the appropriate credit bureaus cannot legally be carried out. ¶13. *A*

7 *subsequent repayment in part or in full does not extend the seven year time period.*

8   Thus, no report concerning the Arrow debt could legally appear on a debtor's credit report.

9 Arrow's statements that if the debtor paid money on the account, the debt credit bureaus would be

10 notified and subsequent references to credit bureau reporting are misleading because they tell the

11 unsophisticated consumer that payment or non-payment of the claimed debt may impact the

12 consumer's credit rating when that is not the case. *Id.* The letters also lead the least sophisticated

13 debtor to believe that a report of a settlement would ***benefit*** the debtor's credit report. In fact, the

14 FTC has repeatedly commented that: saying nothing about a debt which has been previously

15 excluded from a debtor's credit report is better than reporting it as a paid or settled collection item.

16   Plaintiff's claim is that by sending letters stating that settlements on debts which can no

17 longer legally appear on a credit report will be reported to credit bureaus, Arrow violated the

18 FDCPA, 15 U.S.C. §1692e, §1692e(5) and §1692e(10) which prohibit:[2]

19    ***False or misleading representations***

20    ***A debt collector may not use any false, deceptive, or misleading***
     ***representation or means in connection with the collection of any debt.***
21    ***Without limiting the general application of the foregoing, the following***
     ***conduct is a violation of this section...***
22

23    ***(5) The threat to take any action that cannot legally be taken or that is not***
     ***intended to be taken.***

24

25 [2] "[T]he use of any false, deceptive, or misleading representation in a collection letter violates

26 §1692e regardless of whether the representation in question violates a particular subsection of that
  provision." *Clomon v. Jackson*, 988 F.2d 1314, 1320 (2d. Cir. 1993) (citing 15 U.S.C. §1692e as

27 specifying certain prohibited acts "without limiting the general application of the foregoing
  language").

28

PLAINTIFF'S OPPOSITION TO     -2-     05-CV-0171 JAH (RBB)
DEFENDANT'S MOTION TO DISMISS

1

**(10)  The use of any false representation or deceptive means to collect or
attempt to collect any debt or to obtain information concerning a consumer.**

2

*Id.*

3

## II.  THE FAIR DEBT COLLECTION PRACTICES ACT

4

The FDPCA states that its purpose, in part, is "to eliminate abusive debt collection practices

5

by debt collectors." 15 U.S.C. §1692 *et seq.*  It is designed to protect consumers who have been

6

victimized by unscrupulous collectors, regardless of whether a valid debt exists.  *Baker v. G.C.*

7

*Services Corp.*, 677 F.2d 775, 777 (9th Cir. 1982); *Masuda v. Thomas Richards & Co.*, 759 F. Supp.

8

1456, 1462 (C.D. Cal. 1991); *Mace v. Van Ru Credit Corp.*, 109 F.3d 338 (7th Cir. 1997); *McCartney*

9

*v. First City Bank*, 970 F.2d 45, 47 (5th Cir. 1992).

10

> The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct
> which harasses, oppresses or abuses any debtor; and false, deceptive, or misleading
> statements, in connection with the collection of any debt; it also requires debt
> collectors to give debtors certain information.

11

12

13

15 U.S.C. §1692d, 1692e, 1692f and 1692g.

14

In enacting the FDCPA, Congress recognized that the:

15

> [U]niversal agreement among scholars, law enforcement officials, and even debt
> collectors that the number of persons who willfully refuse to pay just debts is
> minuscule [sic] ... [T]he vast majority of consumers who obtain credit fully intend to
> repay their debts.  When default occurs, it is nearly always due to an unforeseen
> event such as unemployment, overextension, serious illness, or marital difficulties or
> divorce.

16

17

18

S. Rep. No. 382, 95th Cong., 1st Sess. 3 (1977), reprinted in 1977 USCCAN 1695, 1697.

19

Under the FDCPA, statutory damages are recoverable for violations, whether or not the

20

consumer proves actual damages. 15 U.S.C. §1692k; *Baker*, 677 F.2d at 780-81; *Irwin v. Mascott*,

21

112 F. Supp. 2d 937, 963 (N.D. Cal. 2000).  Any violation of the FDCPA entitles each plaintiff in

22

the class to an award of statutory damages, one award per plaintiff, not exceeding $1,000 for the

23

plaintiff and an amount not exceeding the lesser of $500,000 or 1% of the defendant's net worth for

24

the class in a class action. 15 U.S.C. §1692k (2); *Irwin*, 112 F. Supp. 2d at 963. The amount is to be

25

determined based on "the frequency and persistence of noncompliance by the debt collector, the

26

nature of such noncompliance, the resources of the debt collector, the number of persons adversely

27

28

1  affected, and the extent to which the debt collector's noncompliance was intentional." 15 U.S.C.

2  §1692k.

3       In the context of statements about legal or other action, the Federal Trade Commission

4  ("FTC") has stated:

5       6. Threat of legal or other action, Section 807(5), 15 U.S.C. §1692e(5), refers not
        only to a false threat of legal action, *but also a false threat by a debt collector that*
6       *he will report a debt to a credit bureau*, assess a collection fee, or undertake any
        other action if the debt is not paid. A debt collector may also not misrepresent the
7       imminence of such action.

8       *A debt collector's implication*, as well as a direct statement, of planned legal action
        may be an unlawful deception. For example, reference to an attorney or to legal
9       proceedings may mislead the debtor as to the likelihood or imminence of legal
        action.

10
        A debt collector's statement that legal action has been recommended is a
11      representation that legal action may be taken, since such a recommendation implies
        that the creditor will act on it at least some of the time.[3]

12
        The Ninth Circuit has held that whether a debt collector's conduct violates the FDCPA

13 should be judged from the standpoint of the "least sophisticated debtor" (hereinafter referred to as

14 the "LSD"). *Swanson v. Southern Or. Credit Serv.*, 869 F.2d 1222, 1227 (9th Cir. 1988); *Baker*, 677

15 F.2d 778; *Masuda*, 759 F.Supp. at 1460. "Although this standard is objective, the standard is lower

16 than simply examining whether particular language would deceive or mislead a reasonable debtor."

17 *Swanson*, 869 F.2d at 1227. "The question is not whether these plaintiffs were deceived or misled,

18 but rather whether an unsophisticated consumer would have been mislead." *Beattie v. D.M.*

19 *Collections, Inc.*, 754 F. Supp. 383, 392 n.20 (D. Del. 1991).

20      The LSD standard is grounded "in the assumption that consumers of below-average

21 sophistication or intelligence are especially vulnerable to fraudulent schemes." *Clomon*, 988 F.2d at

22 1319. "[T]he fact that a false statement may be obviously false to those who are trained and

23 experienced does not change its character, nor take away its power to deceive others less

24

25

26 [3]Statements of General Policy or Interpretation, FTC Staff Commentary on the Fair Debt Collection
   Practices Act, 53 Fed. Reg. 50097-50110 (Dec. 13, 1998).

27

28

1    experienced." *Id.* at 1318. *See also Russell v. Equifax A.R.S.*, 74 F.3d 30 (2d Cir. 1996) (the least

2    sophisticated consumer lacks the astuteness of an attorney and even the sophistication of an average

3    consumer).

4    **III.    MOTION TO DISMISS STANDARD**

5        A complaint should not be dismissed for failure to state a claim "unless it appears beyond

6    doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to

7    relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506

8    (2002), the Supreme Court reemphasized the extremely liberal pleading standard of the Federal

9    Rules of Civil Procedure, noting that a dismissal of claims is only appropriate in the rarest of

10    circumstances:

11        Given the Federal Rules' simplified standard for pleading, "[a] court may dismiss a
complaint only if it is clear that no relief could be granted under any set of facts that

12        could be proved consistent with the allegations" (citing *Hishon v. King & Spalding*,
467 U.S. 69, 73 (1984)). If a pleading fails to specify the allegations in a manner that

13        provides sufficient notice, a defendant can move for a more definite statement under
Rule 12(e) before responding. Moreover, claims lacking merit may be dealt with

14        through summary judgment under Rule 56. The liberal notice pleading of Rule 8(a)
is the starting point of a simplified pleading system, which was adopted to focus

15        litigation on the merits of a claim.

16    *Swierkiewicz,* 534 U.S. at 514.

17        *See also Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,*

18    507 U.S. 163, 168-69 (1993). "A motion to dismiss must be denied: unless it appears beyond a

19    doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to

20    relief." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds, Davis v. Scherer*,

21    468 U.S. 183 (1984). The question is not what facts have or have not been alleged, but whether a

22    plaintiff can submit proof to support his claim:

23        When a federal court reviews the sufficiency of a complaint, before the
reception of any evidence either by affidavit or admissions, its task is necessarily a

24        limited one. The issue is not whether a plaintiff will ultimately prevail but whether
the claimant is entitled to offer evidence to support the claims.

25    *Scheuer*, 416 U.S. at 236.

26        The Court must accept all well-pleaded allegations of the complaint as true, and any

27    ambiguities or doubts concerning sufficiency of the claim must be resolved in favor of the pleader.

28

1  *Hishon*, 467 U.S. at, 73; *Usher v. City of Los Angeles*, 828 F.3d 556, 561 (9th Cir. 1987).  In

2  reviewing a Rule 12(b)(6) motion to dismiss, the court must assume all factual allegations as true,

3  and must construe them in the light most favorable to the nonmoving party. *Gompper v. VISX, Inc.*,

4  298 F. 3d 893, 895 (9th Cir. 2002); *Yamaguchi v. U. S. Dep't of the Air Force*, 109 F.3d 1475, 1481

5  (9th Cir. 1997).  Even if the face of the pleadings suggests that the chance of recovery is remote, the

6  court must allow the plaintiff to develop the case at this stage of the proceedings. See *United States*

7  *v. Redwood*, 640 F.2d 963, 966 (9th Cir. 1981).

8       If the Court dismisses the complaint, it must then decide whether to grant leave to amend.

9  The Ninth Circuit has "repeatedly held that 'a district court should grant leave to amend even if no

10  request to amend the pleading was made, unless it determines that the pleading could not possibly be

11  cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).  This

12  rule is necessary to give plaintiffs the benefit of the broad standard for surviving a Rule 12(b)(6)

13  motion as articulated in *Hishon*, 467 U.S. at 73 and *Conley*, 355 U.S. at 45-46.

14  **IV.   ARGUMENT**

15      **A. An Implied Threat is Actionable Under the FDCPA**

16       Defendant contends that regardless of "whether Defendant is currently reporting" a time-

17  barred debt, there is no FDCPA violation "without an explicit threat" to do so. Def. Mem. at 7:3-10.

18  That is simply wrong.[4]  The FTC has commented that in the context of statements about legal or

19  other action, "[a] debt collector's ***implication***, as well as a direct statement, of planned legal action

20  may be an unlawful deception," pursuant to 15 U.S.C. §1692e (5).[5]  Decisional authority is in

21  accord. *See Baker*, 677 F.2d at 779 (affirming district court's finding that debt collector's notice

22  "create[d] the ***impression*** that legal action by defendant is a real possibility"); *Swanson*, 869 F.2d at

23

24  ---

  [4]  For this proposition, Defendant relies solely upon a misreading of *Freyermuth v. Credit Bureau*
25  *Servs., Inc.*, 248 F.3d 767, 771 (8th Cir. 2001) which held there is no FDCPA violation "in the absence of a threat of litigation or actual litigation."  The opinion does ***not*** state "in the absence of an
26  ***actual*** threat of litigation or actual litigation" as Defendant contends. Def. Mem. at 7.

27  [5] Statements of General Policy or Interpretation, FTC Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097-50110 (Dec. 13, 1998).

28

1   1227-28 ("the least sophisticated debtor ... would associate the threat to undertake 'a *complete*

2   investigation [of] your employment and assets' with an embarrassing inquiry with his employer

3   concerning the debt, concerning his performance as an employee, and concerning his job security")

4   (emphasis in original); *Beasley v. Collectors Training Inst. Inc.,* No. 98 C 8113, 1999 U.S. Dist.

5   LEXIS 13275, at *7-*8 (N.D. Ill. Aug. 17, 1999) (threats which are *ambiguous* constitute a violation

6   of 15 U.S.C. §1692e(10); *Gammon v. G.C. Servs. Partnership,* 27 F.3d 1254, (7th Cir. 1994)

7   (conveying the *impression* that debt collector is closely involved with government entities violates

8   15 U.S.C. §1692e(1)); *Russell,* 74 F.3d at 36 ("*advanc[ing] a message* that is open to an inaccurate

9   yet reasonable interpretation by the consumer" is deceptive under 15 U.S.C. §1692e(10)).

10      Defendant's argument is also comparable in merit to that rejected in *United States v. Nat'l*

11   *Fin. Servs.,* 98 F.3d 131 (4th Cir. 1996), where defendants sent out numerous letters referring to

12   attorneys and legal action and, when sued by the Government, tried to argue that none of them

13   positively represented that suits would be filed:

14       On appeal, the *defendants argue that their notices did not threaten legal action*
        *because they never state that a suit "will be" filed, or "is going to be" filed.* All of
15       their statements were open to interpretation, they contend. With regard to the NFS
        notices, they argue, that referring a matter to an attorney does not
16       necessarily imply that a legal action will be filed, but merely implies that the lawyer
        will consider whether to institute a proceeding against a consumer. The defendants
17       aver that a reasonable consumer might conclude that he would not be sued because of
        the small balance involved. Concerning the statement, "remember your attorney will
18       want to be paid," the defendants assert that they simply stated an irrefutable fact: a
        debtor weighing the risks of nonpayment may need to consult counsel, who will
19       charge a fee. And if the debtor is sued, he or she will incur legal fees.

20   *Id.* 137.

21      Rejecting this reasoning as specious, the court of appeals held:

22       While the defendants are *literally correct*, we do not believe that any consumer could
        reasonably believe that NFS intended to provide a public service by informing him
23       about the basic functions and fee requirements of attorneys.

24   *Id.*

25      Furthermore, "[c]ourts have held that collection notices can be deceptive if they are open to

26   more than one reasonable interpretation, at least one of which is inaccurate." *Clomon,* 988 F.2d at

27   1319 (citing *Dutton v. Wolhar,* 809 F.Supp. 1130 (D. Del. 1992) ("least sophisticated debtor is not

28

1  charged with gleaning the more subtle of the two interpretations" of collection notice)); *Russell*, 74

2  F.3d at 35 (same).

3       Thus, this Court should not limit its analysis to whether Arrow's collection letters contain

4  "explicit threats" to report time-barred debts – as Defendant contends.   It is well settled that

5  collection letters which contain implicit deceptive threats, false impressions and associations,

6  ambiguities or inaccurate messages, as viewed through the eyes of the hypothetical LSD, are

7  actionable under the FDCPA even if they are literally correct.

8      **B.  Arrow's Letters Are Deceptive and Misleading to the Hypothetical Least**
        **Sophisticated Debtor, the Standard Is Lower Than Arrow Contends**

9

10       The offensive language in Arrow's collection letters states "[u]pon receipt of the settlement

amount and clearance of funds, and if we are reporting the account, the appropriate credit bureaus
11
will be notified that this account has been settled." ¶12.  It continues by asking Plaintiff to "mark the
12
appropriate box" including one that states "[w]hen my funds clear, and if you are reporting the
13
account, you will notify the appropriate credit bureaus of this settlement." *See* Exhibits A and B
14
attached to the Complaint, dated April 30, 2004 and July 8, 2004 respectively.   The quoted
15
statements are deceptive and misleading because they falsely imply that the credit bureaus will put
16
the information on the debtor's credit report and that such action would be to the debtor's benefit.
17
     Often, debtors will pay or settle an account to improve their credit reports.   For this reason,
18
credit reporting is a "powerful tool designed, in part, to wrench compliance with payment terms."
19
*Rivera v. Bank One*, 145 F.R.D. 614, 623 (D.P.R. 1993).   The language in a collection letter can be
20
"cleverly drafted in order to insinuate what obviously cannot be stated directly." *See Gammon*, 27
21
F.3d at 1258.  Clearly, Arrow could not represent that if the debt were paid, a credit bureau would
22
simply place that fact on the debtor's credit report if the debt were beyond the FCRA reporting
23
period. That would be an outright lie. Telling an unsophisticated debtor that Arrow will notify the
24
credit bureaus that the debt has been settled deceptively implies that the credit bureaus will do
25
something with the information of benefit to the consumer.  However, the credit bureaus should not
26
report the debt at all because it is too old.
27

28

1    Under the FCRA, 15 U.S.C. §1681 *et seq.*, a credit bureau (consumer reporting agency) may

2  not report "accounts placed for collection or charged to profit and loss which antedate the report by

3  more than seven years." 15 U.S.C. §1681c(a)(4). The seven year period "shall begin, with respect

4  to any delinquent account that is placed for collection (internally or by referral to a third party,

5  whichever is earlier), charged to profit and loss, or subjected to any similar action, upon the

6  expiration of the 180-day period beginning on the date of the commencement of the delinquency

7  which immediately preceded the collection activity, charge to profit and loss, or similar action." 15

8  U.S.C. §1681c(c)(1).

9    The FTC staff has repeatedly stated that the seven year period begins to run when an account

10  is charged off or placed for collection, whichever occurs first.[6] The period is not extended by later

11  reporting of the delinquency by the creditor.[7] The reasoning is that a creditor may not extend the

12  limitation period by delaying the placement of the account for collection, charging off the debt, or

13  reporting the account to a reporting agency.

14    ***The reporting period is not extended by assignment to another entity for further collection,***

15  ***or by a partial or full payment of an account.[8]*** For example, the use of a "paid-to-date" (the date of

16  the last paid periodic installment) may not be used.[9] According to the FTC commentary, a charge to

17  profit or loss occurs on the date the creditor takes action to write off an account, usually to bad debt.

18  *Id.* This presumably will be reflected in the creditor's accounting records. ***A subsequent repayment***

19

20

21  ─────────────────────

22  [6] *See e.g.*, Brinckerhoff, FTC Informal Staff Opinion Letters, July 26, 1985, July 30, 1985,
    September 24, 1985, and November 6, 1985, attached to the Declaration of Elizabeth J. Arleo in
23  Support of Plaintiff's Opposition to Defendant's Motion to Dismiss ("Arleo Decl."), Exs. A-D.

24  [7] *See e.g.*, Brinckerhoff, FTC Informal Staff Opinion Letters, April 30, 1987, May 7, 1987,
    September 17, 1985, September 24, 1985, October 8, 1985 and November 6, 1985, Arleo Decl., Exs.
25  E, F, H, C, G, D respectively.

26  [8] FTC Official Staff Commentary §605(a)(4) item 1. Arleo Decl., Ex. I.

27  [9] Lamb, FTC Informal Staff Opinion Letter, December 23, 1997. Arleo Decl., Ex. J. *See also*
    Amasan, FTC Informal Staff Opinion Letter, February 15, 2000. Arleo Decl., Ex. K.

28

PLAINTIFF'S OPPOSITION TO                                   - 9 -                          05-CV-0171 JAH (RBB)
DEFENDANT'S MOTION TO DISMISS

1  *in part or in full does not extend the time period. Id. Otherwise, consumers who seek to repay*

2  *outstanding obligations are punished, and those who do not are rewarded.[10]*

3        Thus, no report concerning the 7+ year old Arrow debt could legally appear on the debtor's

4  credit report.  The statements that if the debtor paid money on the account, the debt credit bureaus

5  would be notified and subsequent references to credit bureau reporting are misleading because they

6  tell the LSD that payment or non-payment of the claimed debt may impact the consumer's credit

7  rating, when that is not the case.  The statement creates the false impression that the credit bureau is

8  expected to and will ordinarily take the requested action.  If Arrow knows that whatever it says to a

9  credit bureau is unlikely to be reported to third parties by the credit bureau, a statement that it will

10 report something to a credit bureau is deceptive.  The only conceivable purpose of such a statement

11 in a collection letter is to convey the meaning that the credit bureau will take the information and put

12 it on the debtor's credit report, when that would violate the FCRA.

13       Even if Arrow somehow convinced a credit bureau to report the debt as a paid or settled

14 collection item, the LSD could interpret the letters to mean that reporting the payment or settlement

15 will improve the consumer's credit report.[11]  This is not true.  As Arrow correctly points out, it is

16 under a "legal duty to correct and update the credit information it has provided to the credit

17 bureaus."  Def. Mem. at 10.  Under the FCRA, persons furnishing information to credit reporting

18 agencies have a duty to "make the information provided ... complete and accurate."  15 U.S.C.

19 §1681s-2(a)(2).  As a result, the information provided to the credit bureaus by Arrow would include

20

21  [10] Brinckerhoff, FTC Informal Staff Opinion Letters, July 26, 1985 and July 30, 1985; Fitzpatrick,
22  FTC Informal Staff Opinion Letter, March 8, 1985; Peeler, FTC Informal Staff Opinion Letter,
     August 8, 1979.  Arleo Decl., Exs. A, B, L, and M.

23  [11] Another collection agency, NCO Group, Inc. ("NCO"), altered the actual delinquency dates when
24  furnishing debtor information to the credit bureaus.  In May 2004, NCO entered into a consent
     decree with the FTC whereby NCO would pay civil penalties of $1.5 million. The FTC's complaint
25  alleged that NCO violated §623(a)(5) of the FCRA which specifies that any entity that reports
     information to credit bureaus about a delinquent consumer account that has been placed for
26  collection or written off must report the actual month and year the account first became delinquent.
     This date is used by the credit bureaus to measure the maximum seven-year reporting period the
27  FCRA mandates. See "NCO" search at <www.ftc.gov>.  As part of the consent decree, NCO would
     be permanently barred from reporting later-than-actual delinquency dates to credit bureaus.

28

1  *un*favorable information (previously excluded from the consumer's report) that the account was

2  delinquent and charged off to profit, in conjunction with the favorable information that the account

3  was settled.  Thus, a "tradeline" referring to a paid or settled collection item has a significant

4  negative impact on the consumer's credit report when the item was previously excluded.  Whereas

5  saying nothing about an old debt does not.

6  Furthermore, unless informed by the creditor or person furnishing information about a

7  delinquency, a consumer reporting agency has no way of knowing when the delinquency

8  commenced and hence when the information must be eliminated as beyond the statutory limitation.

9  Any person who furnishes information about a delinquent account placed for collection or written

10  off, such as Arrow, must also inform the reporting agency *when* the preceding delinquency

11  commenced.  15 U.S.C. §1681s-2(a)(5).

12  Credit bureaus, often unaware of the earlier dates of delinquency, use the dates furnished by

13  debt collectors such as Arrow.  The date of the delinquency does not have to be provided until 90

14  days following the time the information is first provided to the credit reporting agency.  *Id.*  An

15  agency which does not receive the date of the delinquency within 90 days risks reporting inaccurate

16  information.  Thus, if Arrow reported to the credit bureaus the settlement of an account without

17  simultaneously reporting the 7+ year charge off date, then unfavorable information previously

18  excluded from the debtor's credit report would then be erroneously reported to the debtor's

19  detriment - not the debtor's benefit - as the LSD would interpret Arrow's letters to mean.

20  Arrow now argues that its form letters are not deceptive because they:

21  [M]erely advise the debtor that if Defendant has made a credit report of an account's
   delinquency in the past, then upon settlement funds clearing Defendant will update
22  the account's tradeline with the credit bureaus to reflect that the current status of the
   account as settled.
23

24  Def. Mem. at 6.  This interpretation makes a number of assumptions, *e.g.* that the LSD: (i) actually

25  reads the language "if we are reporting the account" to mean "if Defendant has made a credit report

26  of an account's delinquency in the past"; (ii) knows whether Arrow has made a credit report about

27  the debt; (iii) knows about the seven year statute of limitations period for reporting debt and

28  understands its complicated implications under the FCRA; (iv) knows that the "past" means only

1   during the time the debt was reportable; and (v) knows whether that tradeline is appearing on his or

2   her credit.   None of these assumptions is realistic as Defendant's hypothetical consumer is

3   significantly more knowledgeable than the hypothetical LSD.[12]

4       Defendant's arguments are pure sophistry, similar to those rejected by the Ninth Circuit in

5   *Swanson,* 869 F.2d at 1226 and *Baker,* 677 F.2d at 779.   In *Swanson,* the court held that §1692e(5)

6   was violated where the least sophisticated debtor would read defendant's demand letter as

7   announcing that debt collector would contact debtor's employer about the debt although it legally

8   could not do so.   Similarly, the *Baker* court affirmed the district court, finding that the following

9   language of the notice: "'Unless payment in full or definite arrangements are made on your

10  account(s) within 48 hours, a complete investigation will begin concerning your employment and

11  assets' created the impression that the legal action by defendant is a real possibility [and] a

12  consumer could legitimately believe that 'further collection procedures' meant court action when

13  defendant had no intention of pursuing such a course of action." *Id.*

14      Defendant also contends that Plaintiff unreasonably interprets the letters to mean that Arrow

15  is "threatening to impact Plaintiff's credit rating even if Defendant is not reporting the account."

16  Def. Mem. at 8.[13]   Defendant distorts the allegations.   The Complaint actually states "references to

17  the credit bureau reporting are misleading because they tell the unsophisticated consumer that

18  payment or nonpayment of the claimed debt may impact the consumer's credit rating, when that is

19  not true." ¶13.   It is evident from Arrow's own memorandum that the offending language is at least

20  an implicit, if not an explicit, threat.   Arrow now says that the "if" language really means, "[i]f

21

22  [12] "Although [the LSD] standard is objective, the standard is lower than simply examining whether particular language would deceive or mislead a reasonable debtor." *Swanson,* 869 F.2d at 1227. Few

23  unsophisticated consumers are aware of the statute of limitations. *See Kimber v. Federal Fin. Corp.,* 668 F. Supp. 1480, 1487 (M.D. Ala. 1987) .

24  [13] Arrow's reliance upon *Anderson v. Credit Collection Services, Inc.,* 322 F. Supp.2d 1094, 1098

25  (S.D. Cal. 2004) is unavailing.   In *Anderson,* plaintiff alleged that "an accurate and complete statutory citation potentially violates the FDCPA" and argued that "verbatim statutory quotes

26  constitute *per se* FDCPA violations." Judge Whelan rejected this theory finding that "the bare text of a statute, ***without more,*** constituted [no] threat of imminent action." *Anderson,* 322 F. Supp. at

27  1099.   Here however, the offending language is not a verbatim statutory quote. *See* §IV.E., *infra.*

28

PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS
05-CV-0171 JAH (RBB)

1  Defendant is not reporting the account, then no further credit reporting is *threatened* or required."

2  Conversely, if Arrow was reporting the debt, as the LSD would believe, then credit reporting *is*

3  *threatened*.

4        Defendant's interpretation emphasizes the deception that Arrow inflicts upon consumers.

5  The FCRA requires Arrow to provide credit bureaus with the date when a preceding delinquency

6  commenced. 15 U.S.C. §1681s2(a)(5). As a result, *before* the letter is mailed, Arrow knows or

7  should know, whether it "is reporting the account." *See also*, §IV.D., *infra*. Yet, Arrow

8  conveniently omits this information from the letter to insinuate what it obviously cannot state

9  directly - that Arrow is *not* reporting the account. The only reason Arrow's letters refer to credit

10 bureau reporting is to hold out an inducement for the consumer to pay Arrow money. Unless Arrow

11 intended to get across the meaning that the payment will appear on the debtor's credit report, the

12 reference to the credit report has no purpose. Arrow appears to have selected phraseology which

13 would convey that meaning, while permitting it to engage in the linguistic sophistry found in its brief

14 in the event of challenge.

15        Defendant's statement that Plaintiff's claims generally "lack [] seriousness" (Def. Mem. at 3)

16 is bold considering that a federal district court in Illinois denied Arrow's motions to dismiss similar

17 claims involving Arrow's apparently frequent purchase of and attempts to enforce debts that were

18 charged off more than seven years previously. In 2003, a federal class action complaint was filed in

19 the Illinois court alleging violations of the FDCPA, 15 U.S.C. §§1692e, 1692e(2), 1692e(8) and

20 1692e(10), involving collection letters sent by Arrow with similar language. *See Redd v. Arrow Fin.*

21 *Servs.* No. 03 C 1341, 2004 U.S. Dist. LEXIS 5421, at *1 (N. D. Ill. Mar. 31, 2004).[14]

22        The letter at issue in *Redd* stated: "[u]pon receipt of the settlement amount and clearance of

23 funds, the appropriate credit bureaus will be notified that this account has been settled." *Id.,* at *2.

24

_____

25 [14] The *Redd* action was consolidated with a similar action in the same court entitled *Maxwell v.*
26 *Arrow Fin. Servs.,* No. 03 C 1995, 2004 U.S. Dist. LEXIS 5462, (N. D. Ill. Mar. 31, 2004). *Redd,*
   2004 U. S. Dist. LEXIS 5421, at *4. The complaint in *Maxwell* alleges claims under the Maine Fair
27 Debt Collection Practices Act similar to the FDCPA's §1692e(5) and §1692e(10). *Maxwell,* 2004
   U. S. Dist. LEXIS 5462, at *3.

28

1 | Based on this statement, plaintiff claimed that Arrow violated §1692e because the age of her debt

2 | was greater than seven years old and "reference to a consumer's credit report in the letter it sent is

3 | misleading because it tells an unsophisticated consumer that, absent a payment, Arrow could have

4 | the debt appear on the consumer's credit report as an unpaid delinquent debt." *Id.*, at *4.  In July

5 | 2003, the Illinois district court denied Arrow's 12(b)(6) motion to dismiss stating, in part:

> The plaintiffs allege that the defendant's statement that, if they paid money on account of the debt, credit bureaus would be notified is misleading in that it suggests to the unsophisticated consumer that a credit bureau could report the payment, when that is not currently permissible under the law . . . ***Accepting this allegation as true for purposes of this motion, it is clear that the letter could be construed as deceptive, misleading, or false under the FDCPA. Therefore, the complaints state a claim under the statute and the motion must be denied.***

10 | Order re: Defendant's Motion to Dismiss; *Redd v. Arrow Fin. Servs.*, No. 03 C 1341 (July 23, 2003).

11 | Arleo Decl., Ex. N.

12 | In March 2004, the Illinois district court certified two classes of persons who received the

13 | same form letters as each of the representative plaintiffs in *Redd* and *Maxwell*. *See Redd*, 2004 U.S.

14 | Dist. LEXIS 5421, at *19-*20 (certifying a class comprised of "[a]ll natural persons except those

15 | with Maine addresses" who received the same form letter as plaitiff *Redd*); *Maxwell,* 2004 U.S. Dist.

16 | LEXIS 5462, at *22 (certifying a class of Maine residents who received the same form letter as

17 | plaintiff Maxwell).

18 | Arrow will likely argue in reply that the added language "and if we are reporting the

19 | account," is the crucial difference between the form letters at issue here and those at issue in *Redd*

20 | and *Maxwell*.  *See* Def. Mem. at 4, 6.  As discussed below, this supplemental language does not

21 | exculpate Arrow from liability.  Notwithstanding the "if" language, Arrow's letter still ***suggests*** to

22 | the LSD that a credit bureau could report the payment, when that is not permissible under the FCRA.

### C. Arrow's Added Language "And If We Are Reporting the Account" Does Not Preclude Liability in the Context of Promising to Report Any Settlement of the Account to the Appropriate Credit Bureaus

25 | Defendant contends that the added language "and if we are reporting the account" deems the

26 | letter truthful because this phrase means to convey that "[i]f Defendant is not reporting the account,

27 | then no further credit reporting is threatened or required." Def. Mem. at 6. The added language and

28 | Arrow's interpretation of it are meaningless, however, to the LSD who does not know whether

1    Arrow is reporting the debt.  Moreover, even a disclaimer, does not preclude liability, if in the

2    context of the letter defendant is threatening to take any action that cannot be taken or that is not

3    intended to be taken.

4        The *Irwin* court analyzed whether five different collection letters sent to plaintiff falsely

5    threatened to take action that could not legally be taken or that was not intended to be taken.  As

6    Arrow does in its motion to dismiss, the defendant in *Irwin* argued that disclaimers and mitigating

7    language precluded FDCPA liability.  In one letter, defendant wrote about "damages and court

8    costs," stating that a check writer had ten days to pay to avoid a lawsuit, and included a sample

9    lawsuit with its collection demand. *Irwin*, 112 F. Supp. 2d at 951.[15]  The court found that *'[e]ven a*

10   *disclaimer* such as 'NO LEGAL ACTION HAS BEEN OR IS NOW BEING TAKEN AGAINST

11   YOU' *does not preclude liability*, if in the context of the letter the debt collector is threatening to

12   sue." *Id.* (citing *Bentley v. Great Lakes Collection Bureau,* 6 F.3d. 60,63 (2d Cir. 1993)).

13       Analyzing a different letter which stated that "suit may be initiated against you," the *Irwin*

14   court held that *"[t]he use of the word 'may' does not mitigate the tone of the letter* which purports

15   to be a 'formal notice,' names a particular court, and references a legal action, a judgment, cost of

16   service of process, attorneys' fees, garnishment and levies.  This court finds that all the letters are

17   calculated to intimidate the least sophisticated consumer into believing that legal action against her is

18   imminent." *Id.*

19       The *Irwin* court also found that an added heading "YOU HAVE NOT YET BEEN SUED"

20   merely indicated "but a brief grace period to pay [defendant's] demand after which the check writer

21   will be sued" in the context of a letter communicating that a lawyer was hired to sue the debtor, that

22   the lawsuit would be filed on a specific date if no payment was made, and added a mock complaint.

23   *Irwin*, 112 F. Supp. 2d at 952 (finding "[t]hat the letter indicates that the debtor's only options are

24   either payment or being sued" which constitutes a threat to sue).

25       Similarly, in *Bentley*, the Second Circuit found that defendant's disclaimer "NO LEGAL

26   ACTION HAS BEEN OR IS NOW BEING TAKEN AGAINST YOU" did not preclude liability

27

28   [15] (granting plaintiffs' motions for partial summary judgment and preliminary injunction).

---

PLAINTIFF'S OPPOSITION TO                    - 15 -                    05-CV-0171 JAH (RBB)
DEFENDANT'S MOTION TO DISMISS

1 under the FDCPA. The court held that a collection "letter's references to the various proceedings

2 supplementary to judgment available to enforce collection (*e.g.* garnishment)" violated §1692e(5)

3 *and* found that "[i]n the context of the letter, the threat of a lawsuit instigated by [defendant] is

4 strengthened" by the disclaimer, especially when "the likelihood of such proceedings . . . was almost

5 non existent." *Bentley*, 6 F.3d at 63. [16]

6        In the context of the letters at issue here, Arrow is threatening to contact the "appropriate

7 credit bureaus" regardless of whether the debtor pays Arrow money and the account is settled. By

8 including the ambiguous "if" statement and not indicating to the debtor whether Arrow is actually

9 reporting the account at issue, the defendant effectively misled the LSD into believing that the

10 Arrow debt could still affect their credit report. Nor does the use of the word "if" mitigate the tone

11 of the letters which are calculated to intimidate the LSD into believing that their only options are to

12 settle the debt or suffer. The letters created the impression that the debtor's failure to settle said

13 account could in fact have a negative effect on his or her credit. Thus, Arrow's disclaimer "if we are

14 reporting the debt" does not preclude liability.

15        Defendant's theory might be remotely plausible if it had significantly altered the deceptive

16 language *after* the Illinois district court found that the same language "could be construed as

17 deceptive, misleading, or false under the FDCPA." *See* July 23, 2003 Order re: Defendant's Motion

18 to Dismiss, Arleo Decl., Ex. N. Instead, Arrow retained verbatim the offending language but added

19 the ambiguous statement "and if we are reporting the account" in a misguided attempt to preclude

20 liability under the FDCPA. To ensure compliance with the FDCPA, Arrow should have made clear

21 that the account was not currently being reported because it was beyond the seven year limitation

22 period *or* omitted the language entirely after conducting an assessment of the debt to determine

23 whether it was charged off seven years previously. *See* §IV.D., *infra*.

24

25 [16]     Specifically, the letter stated: "AGAIN, DEPENDING UPON THE LAW IN YOUR STATE, IF SUCH JUDGMENT WERE NOT THEREUPON SATISFIED, IT MIGHT BE COLLECTED BY

26 ATTACHMENT OF AN EXECUTION UPON YOUR REAL AND PERSONAL PROPERTY. GARNISHMENT MAY ALSO BE AN AVAILABLE REMEDY TO SATISFY AN

27 UNSATISFIED JUDGMENT, IF APPLICABLE IN THE STATE IN WHICH YOU RESIDE." *Id.* at 62.

28

### D. The Letters are Actionable Because Arrow Failed to Individually Assess Whether the Debt Was More Than Seven Years Old

Even if this Court found that the letters are not deceptive or misleading to the hypothetical LSD, it should still deny Arrow's motion to dismiss and allow Plaintiff an opportunity for discovery to establish that Arrow conducted no individual assessment as to whether the debt was beyond the seven year limitation period. In other cases alleging violations of §1692e, district courts, including those within the Ninth Circuit, have recognized that a false threat to take action may be established by showing that prior to the mass mailing of collection letters, no individual assessment was made as to whether a threat would be carried out. For example, in *Irwin*, 112 F. Supp. 2d 937, plaintiff alleged that defendant collection agency violated §1692e(5) when it mass mailed collection letters, signed by defendant's general counsel, which contained impermissible threats of future litigation. *Irwin*, 112 F. Supp. 2d at 951 (granting plaintiffs' motions for partial summary judgment and preliminary injunction).[17] During his deposition, defendant's general counsel testified that, among other things, he was responsible for reviewing the letters to ensure that none would be sent regarding checks written more than four years earlier (state limitation period). *Id*. In granting plaintiff's motion for summary judgment, the court stated:

> [G]eneral counsel for [defendant], neither conducted individual reviews of debtor files nor decided if a particular dunning letter should be sent, nor knew the identities of the check writers to whom individual letters were sent. The attorneys merely scanned the spreadsheets and the completed letters to satisfy some rote requirement that their eyes should fall on the documents before letters were sent out. The communications to check writers were not "from" an attorney in any meaningful sense of the word ... Consequently, the letters are false and misleading and as a matter of law violate the FDCPA.

*Id.*

Likewise in *Masuda*, 759 F. Supp. at 1459-61, plaintiff alleged that defendant collection agency violated §1692e of the FDCPA by sending him letters which purported falsely to have been

---

[17] *See also Irwin v. Mascott*, 96 F.Supp. 2d 968 (N.D. Cal. 1999) (granting plaintiff's motion for class certification).

1  sent personally by an attorney.[18] The attorney, on whose letterhead the collection letter was written,

2  testified that he and defendant's employees "drafted the attorney form letter which the debt collector

3  sent to alleged debtors" but it was the defendant debt collector which "determined when to generate

4  and send personalized copies of the letter to individual debtors." At the time the letter was sent, the

5  attorney had not reviewed plaintiff's file and was not involved in the case.  The district court held

6  that defendant's debt collection procedure violated §1692e(3) and granted summary judgment stating

7  "although attorney [] may have drafted a substantial portion of the form letter, the letter falsely

8  suggests to the least sophisticated debtor that an attorney has been retained to collect his or her

9  particular debt." *Masuda*, 759 F. Supp. at 1460.[19]  In so holding, the *Masuda* court followed

10  *Kimber*, 668 F. Supp. at 1487. In *Kimber*, the defendant debt collector filed suit to collect a debt

11  despite the fact that the state statute of limitations appeared to bar the suit. *Id.* Finding that the debt

12  collector did not examine whether the limitations period had been tolled before filing its action, the

13  court held this conduct by the debt collector to be unfair and unconscionable in violation of §1692f

14  "[b]ecause few unsophisticated consumers would be aware that a statute of limitations could be used

15  to defend any lawsuits based on stale debts, such consumers would unwittingly acquiesce to such

16  lawsuits." *Id.*

17       Similarly, the Court should find here that Arrow could have conducted an individualized

18  review of each account to determine whether the debt was beyond the FCRA's seven year statute of

19  limitations before mass mailing the letters. Rather than including the deceptive language concerning

20  the settlement of debt being reported to the credit bureau, Arrow should have omitted altogether the

21  credit bureau references in the letters sent to debtors where the debt was beyond seven years. It did

22

23

---

24  [18] As alleged in the Complaint, under 15 U.S.C. §1692e, "[a] debt collector may not use any false,

25  deceptive, or misleading representation or means in connection with the collection of any debt." The
FDCPA specifically proscribes the "false representation or implication that any individual is an

26  attorney or that any communication is from an attorney." 15 U.S.C. §1692e(3).

27  [19] Judge Pfaelzer also noted that defendant's conduct violated §1692e(3) "even if the Court were to
apply a 'reasonable consumer standard'." *Masuda*, 759 F. Supp at 1461 n. 8.

28

1  not. As a result, debtors received the false, deceptive and misleading letters which they interpreted

2  to mean that payment or non-payment of the claimed debt could impact their credit rating.

3  **E. Arrow's Discussion of the Fair Credit Reporting Act and CCRAA is Irrelevant and Misleading**

4

5  Arrow devotes nearly one-third of its brief to a discussion of Arrow's purported compliance

   with the technical requirements of the FCRA and California Consumer Credit Reporting Agencies

6  Act ("CCRAA"). Def. Mem. at 9-13. This discussion can only be described as an attempt to

7  mislead the Court. It is irrelevant. No FCRA or CCRAA claims are alleged, only FDCPA claims.

8  The only reference to the FCRA is to explain why Arrow has made a misleading representation.

9
   Arrow contends that the offensive language: "[u]pon receipt of the settlement amount and
10
   clearance of funds, and if we are reporting the account, the appropriate credit bureaus will be
11
   notified that this account has been settled" is "merely a restatement of the requirements under the
12
   FCRA and CCRAA to correct and update information." Def. Mem. at 10. The two cases cited by
13
   Arrow in support of its theory are inapposite. *See* Def. Mem. at 11-12 (citing *Morse v. Dun &*
14
   *Bradstreet, Inc.*, 87 F.Supp.2d 901 (D. Minn. 2000); *Jang v. A.M. Miller & Assocs.*, 122 F.3d. 480
15
   (7th Cir. 1997)). In *Jang*, plaintiff alleged that language concerning the debtor's 30 day debt
16
   validation rights, explicitly required by the FDCPA, was misleading because defendant had a policy
17
   of "returning the account to defendants' creditor when verification was requested." Def. Mem. at 12
18
   (citing *Jang*, 122 F.3d at 484). Similarly, in *Morse*, plaintiff took issue with the inclusion of
19
   language explicitly required by Colorado law because she was a Minnesota resident. *Morse*, 87 F.
20
   Supp. 2d at 902. Here, Arrow simply fails to cite any statute – nor can it – requiring the offensive
21
   language contained in the letters sent to Plaintiff.
22
   Defendant correctly cites to the FCRA and CCRAA as requiring that the consumer receive a
23
   written warning that "[a] creditor may submit negative credit information concerning a consumer" to
24
   a credit bureau and that Defendant is "under a legal duty to correct and update the credit information
25
   it has provided to the credit bureaus." Def. Mem. at 9-11. The offending language here, however,
26
   makes no reference to "negative credit information," but is couched in terms of positive information
27
   being sent to the credit bureaus. Nor does the offending language accurately reflect the scope of
28

1 Arrow's duty to "correct or update" the credit information. *See* §IV.B., *supra.* Thus, it cannot be a

2 "restatement of the requirements" as Arrow suggests. Def. Mem. at 10.

3      The offending language is supplementary.  It is not explicitly required by the FCRA,

4 CCRAA or FDCPA, nor does it mirror any statutorily required language. Defendant ignores this fact

5 when it cites to the holding in *Jang*: "[w]hen a debt collector provides the language required by the

6 statute, and only the language required by the statute, we hold that a collection letter cannot be false,

7 misleading or deceptive." Def. Mem. at 12 (citing *Jang*, 122 F.3d at 484).  Applying the same

8 rationale here, because the offending language in Arrow's letters is not statutorily required, then it

9 can be found to be false, misleading or deceptive.

10      Thus, Arrow's theory that the language is "merely a restatement" of statutory requirements is

11 nothing more than a last ditch effort to legitimize language already adjudicated "deceptive,

12 misleading or false" by an Illinois district court. The *only* purpose of this language is to hold out an

13 inducement for the consumer to pay Arrow money on a time-barred debt previously excluded under

14 the seven year statute of limitations.

15 **V.     CONCLUSION**

16      Based upon the foregoing facts and authority, Arrow's motion to dismiss should be denied.

17 Should the Court decide to grant Arrow's motion, or any part thereof, Plaintiff respectfully requests

18 leave to amend the Complaint.[20]

19 DATED: March 21, 2005                  Respectfully submitted,

20                                        LAW OFFICE OF ELIZABETH J. ARLEO, PLC
                                          ELIZABETH J. ARLEO
21

22

23                                        _____
                                          ELIZABETH J. ARLEO
24

25

26

_____

27 [20] See *Lopez*, 203 F.3d at 1130, as discussed in §III, *supra.*

28

1

2     10085 Carroll Canyon Road, Suite 210-A
      San Diego, CA 92131
3     Telephone:  858/547-9800
      858-547-9880 (fax)

4     ROBERT L. ARLEO
      225 East 79th Street, 2B
5     New York, NY 10021
      Telephone:  212-517-9967
6     212/517-2919 (fax)

7
      Attorneys for Plaintiff
8

9

10

11

12

13

14

15

16
      M:\05-1009 Gonzales v Arrow\Pleadings\05-1009 OPPOSITION OF MOTION TO DISMISS.doc
17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO                    - 21 -                    05-CV-0171 JAH (RBB)
DEFENDANT'S MOTION TO DISMISS

## DECLARATION OF SERVICE BY OVERNIGHT DELIVERY

I, the undersigned, declare:

1.    That declarant is and was, at all times herein mentioned, a citizen of the United States, employed in the City and County of San Diego, over the age of 18 years, and not a party to or interest in the within action; that declarant's business address is 10085 Carroll Canyon Rd, Suite 210-A, San Diego, California 92131.

2.    That on March 21, 2005, declarant served the **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** by depositing a true copy thereof to be placed for UPS collection and delivery at San Diego, California addressed to the parties listed on the attached Service List.

3.    I declare under penalty of perjury that the foregoing is true and correct. Executed this *21st day of March, 2005, at San Diego, California*

KELLY M. RICKARD

SERVICE LIST
*Gonzales v. Arrow Financial Services, Inc.*
U. S. District Court for the Southern District of California
Case No. 05-CV-0171 JAH (RBB)

Attorneys for Plaintiff
LAW OFFICE OF ELIZABETH J. ARLEO
ELIZABETH J. ARLEO
10085 Carroll Canyon Road, Suite 210-A
San Diego, CA 92131
Telephone: 858/547-9800
858/547-9880 (fax)

ROBERT L. ARLEO, ESQ.
225 East 79th Street, 2B
New York, NY 10021
Telephone: 212/517-9967
212/517-2919 (fax)

Attorneys for Defendant

Abraham J. Colman
BUCHALTER NEMER FIELDS & YOUNGER
601 South Figueroa Street, Suite 2400
Los Angeles, CA 90017-5709
Telephone: 213/891-0700
213/630-5712 (fax)

Russell Allyn
BUCHALTER NEMER FIELDS & YOUNGER
601 South Figueroa Street, Suite 2400
Los Angeles, CA 90017-5709
Telephone: 213/891-5105
213/630-5706 (fax)