















R1R    8/14/06    8:48
3:05-CV-00171   GONZALES V. ARROW FINANCIAL
*93*
*P/A.*

FILED

06 AUG 11 PM 3:23

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

PDC          DEPUTY

BY:

1   Desmond Hinds (CASB No. 105831)
    Linda Streeter (CASB No. 105950)
2   HINSHAW & CULBERTSON LLP
3   11601 Wilshire Blvd., Suite 800
    Los Angeles, CA 90025
4   Telephone: 310-909-8000
    Facsimile: 310-909-8001
5
    David M. Schultz (Illinois SBN 6197596)
6   HINSHAW & CULBERTSON LLP
7   222 N. LaSalle Street
    Suite 300
8   Chicago, IL 60601-1081
    Telephone: 312-704-3000
9   Facsimile: 312-704-3001
    Attorneys for Defendant
10

11

12

13                    UNITED STATES DISTRICT COURT
                                                          **BY FAX**
14                  SOUTHERN DISTRICT OF CALIFORNIA

15
    JOHNNY GONZALES, on Behalf of Himself  )  Case No. 05-CV-0171 JAH (RBB)
16  and All Others Similarly Situated,     )
                                           )  **DEFENDANT'S MEMORANDUM OF**
17              Plaintiff,                  )  **POINTS AND AUTHORITIES IN**
                                           )  **SUPPORT OF DEFENDANT'S MOTION**
18         vs.                             )  **FOR SUMMARY JUDGMENT**
                                           )
19  ARROW FINANCIAL SERVICES, INC.,        )
                                              Date:    September 14, 2006
20              Defendant.                     Time:    3:00 pm
                                              Place:   Courtroom 11
21
22                                            Honorable John A. Houston

23

24

25

26

27

28

                        93 RIR

                                              05-CV-0171 (JAH)(RBB)
                                              6086083v1 867705

                        ORIGINAL

## TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................................1

II.    THE ALLEGATIONS OF THE COMPLAINT ...................................................2

III.   UNDISPUTED MATERIAL FACTS ..................................................................3

IV.    ARGUMENT ........................................................................................................5

       A. Standard For Summary Judgment .................................................................5

       B. Summary Judgment Must Be Granted Because There Is No Evidence To
          Support Plaintiff's FDCPA Claims And Plaintiff Has Testified Contrary
          To The Claims He Has Asserted ...................................................................5

              (i)    Arrow's collection letters do not include a false or misleading
                     representation nor threaten illegal or unintended action ...............5

              (ii)   Arrow's credit reporting procedures are wholly irrelevant to plaintiff's
                     allegations, but nonetheless, prove that plaintiff cannot establish any
                     claims against Arrow ...................................................................13

       C. Plaintiff's Claims Under The Rosenthal Act Must Fail As They Are Strictly
          Derivative Of Plaintiff's Defective FDCPA Claims And Improperly Pled
          As A Class Action .......................................................................................14

       D. Arrow is Entitled to Summary Judgment On Plaintiff's Class Action Claims
          Because The Rosenthal Act Does Not Provide For Class Actions .........15

V.     CONCLUSION ...................................................................................................16

05-CV-0171(JAH)(RBB)

6086083v1 867705

## TABLE OF AUTHORITIES

**Federal Cases**

*Alexander v. Sandoval*, 532 U.S. 275, 288 (2001)      15

*Anderson v. Credit Collection Services, Inc.*, 322 F.Supp.2d 1094, 1096-97 (S.D. Cal. 2004)      10, 11

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)      5

*Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996)      6

*Capital One Bank*, 168 F.Supp.2d 526 (D.Md.2001)      2

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)      5

*Dal-Tile Corp. v. US.*, 424 F.3d 1286, 1291 (Fed. Cir. 2005)      15

*Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)      5

*Dunlap v. Credit Protection Ass'n, L.P.*, 419 F.3d 1011, 1012 (9t' Cir. 2005)(per curiam)      11

*Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410,414 (7th Cir. 2005)      5, 6

*Freyermuth v. Credit Bureau Servs., Inc.*, 248 F.3d 767 (8' Cir. 2001)      2

*Gibson v. Chrysler Corp.*, 261 F.3d 927, 939 (2001)      15

*Hapin v. Arrow Financial Services*, 428 F.Supp.2d 1057 (N.D.Cal. April 24, 2006)      12

*Khosroabadi v. North Shore Agency*, 2006 WL 2085245 (S.D.Cal July 19, 2006)      12

*Kimber v. Federal Fin. Corp.*, 668 F.Supp. 1480, 1487 (M.D.Ala. 1987)      8

*Lewis v. ACB Business Services, Inc.*, 135 F.3d 389, 400 (6th Cir. 1998)      10

*Pressley v. Capital Credit & Collection Serv., Inc.*, 760 F.2d 922, 925 (9th Cir. 1985)(per curiam) .......... 12

*Reese v. Arrow Fin. Serv., LLC*, 202 F.R.D. 83, 92-93 (D.Conn.2001) .......... 2

*Renick v. Dun & Bradstreet Receivable Mgmt. Servs.*, 290 F.3d 1055, 1056-57 (9th Cir. 2002)(per curiam) .......... 12

*Swanson v. Southern Oregon Credit Service, Inc.*, 869 F.2d 1222, 1227 (9th Cir. 1989) .......... 10

*Terran v. Kaplan*, 109 F.3d 1428 (9th Cir. 1997) .......... 12

*Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002) .......... 6

*United States ex rel. Mistick PBT v. Housing Authority of City Pittsburgh*, 186 F.3d 376, 395 (3rd Cir. 1999) .......... 15

*Wade v. Regional Credit*, 87 F.3d 1098 (9th Cir. 1996) .......... 11

*Walker v. Cash Flow Consultants, Inc.*, 200 F.R.D. 613 .......... 2

*Wan v. Commercial Recovery Systems, Inc.*, 369 F.Supp.2d 1158 (N.D.Cal. May 19, 2005) .......... 12

*White v. Goodman*, 200 F.3d 1016, 1020 (7th Cir. 2000) .......... 12

**Federal Statutes**

15 U.S.C. § 1692e(5) .......... 1, 3

15 U.S.C. § 1692e(10) .......... 1, 3


**State Statutes**

Cal. Civ. Code § 1788 .......... 1, 3, 14

Cal. Civ. Code § 1788.13 .......... 1, 3, 14

Cal. Civ. Code § 1788.17 .......... 1, 3, 14

Cal. Civ. Code § 1788.30(a) .......... 1, 15, 16

**Other Authorities**

Fed. R. Civ. Proc. 56(c) .......... 6, 7

05-CV-0171(JAH)(RBB)

## I.   INTRODUCTION

Plaintiff Johnny Gonzales alleges that two letters sent to him by Arrow, dated April 30, 2004 and July 8, 2004 respectively, violate both the FDCPA and the Rosenthal Act. Plaintiff claims that the qualified statement, "*if* we are reporting the account, the appropriate credit bureaus will be notified that this account has been settled," constitutes a threat to take action that cannot legally be taken (or that is not intended to be taken) and that said language is false or misleading pursuant to Sections 1692e(5) and 1692e(10) of the FDCPA. Plaintiff further alleges that because said language violates the FDCPA, it necessarily violates Sections 1788.13 and 1788.17 of the Rosenthal Act.

Plaintiff's FDCPA claims must fail as plaintiff cannot present any evidence to establish that Arrow's collection letters contained a threat of any kind or were deceptive or misleading. In fact, plaintiff, in his deposition, affirmatively stated that he was not at all confused by Arrow's collection letters and knew (because it was "common sense") that Arrow could not and would not report his debt to the credit bureaus. Thus, plaintiff has voluntarily established that his claims are without merit.

Plaintiff's claims pursuant to the Rosenthal Act must also fail because they are pled entirely as a derivative of his defective FDCPA claims and are improper in the class action context. Accordingly, plaintiff is unable to establish his Rosenthal Act claims against Arrow.

Summary judgment should be granted for defendant as there is no sufficient evidence to support any genuine issue of material fact for trial. Based on the fact that plaintiff's claims fail as a matter of law, Arrow respectfully requests that this Court enter an order granting judgment in its favor.

## II.    THE ALLEGATIONS OF THE COMPLAINT

Plaintiff has filed this lawsuit based on one sentence of Arrow's collection letter dated April 30, 2004.[1] (Schultz Decl., Ex. A *generally*). Plaintiff allegedly incurred a debt ("the debt") from Bally Total Fitness Corporation which merged with Holiday Spa Clubs of California. *Id.* at p. 2. The debt was charged off on or about December 1992. *Id.* On or about April 30, 2004, defendant Arrow mailed plaintiff a collection letter seeking to collect the debt.[2] *Id.* Arrow sent a subsequent letter on or about July 8, 2004 seeking collection of the same debt.[3] *Id.* (*See* Exhibit A and Exhibit B to Plaintiff's Complaint).

The relevant language of Arrow's collection letters is as follows:

Dear JONNY GONZALES,

At this time we are willing to settle your past due account for 50% of the full balance and accept this amount as settlement of the referenced account. The settlement amount must be made in one payment and received by our office on or before May 28, 2004.

### *** Settlement Amount $276.48 You Save $276.48 ***

Upon receipt of the settlement amount and clearance of funds, and if we are reporting the account, the appropriate credit bureaus will be notified that this account has been settled. Please mark the appropriate box below.

1. [ ] Enclosed find payment for the above-stated settlement amount. By depositing this payment in the sum of $276.48, you have accepted this as settlement. When my funds clear, and if you are reporting the account, you will notify the appropriate credit bureaus of this settlement.

2. [ ] I have enclosed a payment of $_____ which will be sent (check on box)

[ ] Weekly [ ] Every two weeks [ ] Monthly until the full balance is paid in full.

(Exhibits A and B to Plaintiff's First Amended Complaint).

---

[1]    Plaintiff received two Arrow collection letters dated April 30, 2004 and July 8, 2004, respectively. However, both of the letters contain the same language at issue in plaintiffs complaint. (Plaintiff's First Amended Complaint, pp. 2-3) Hereinafter, defendant refers generally to one collection letter only as "Arrow's letter" or "the collection letter."

[2]    It is not a violation for a debt collector to collect on a debt that is time-barred. *See, Freyermuth v. Credit Bureau Servs., Inc.,* 248 F.3d 767 (8' Cir. 2001); *Walker v. Cash Flow Consultants, Inc.,* 200 F.R.D. 613 (N.D.Ill.2001); *Reese v. Arrow Fin. Serv., LLC,* 202 F.R.D. 83, 92-93 (D.Conn.2001); *Wallace v.. Capital One Bank,* 168 F.Supp.2d 526 (D.Md.2001); *Aronson v. Commercial Fin. Serv.,* 1997 WL 1038818 (W.D.Pa. 1997).

6086083v1 867705

Plaintiff complains that the sentence, "[u]pon receipt of the settlement amount and clearance

of funds, and if we are reporting the account...," in addition to the reference to credit reporting in the

subsequent paragraph, violates Sections 1692e(5) and 1692e(10) of the FDCPA.

Specifically, plaintiff articulates the theory of the case in paragraphs 15 and 16 of the

Amended Complaint as follows:

> The reference to credit bureaus is misleading because under the Fair Credit Reporting Act, a
> credit bureau cannot report a debt charged off more than 7 years previously. The "promise"
> to notify credit bureaus cannot legally be carried out.  Furthermore, the references to credit
> bureau reporting are misleading because they tell the unsophisticated consumer that payment
> or nonpayment of the claimed debt may impact the consumer's credit reporting, when that is
> not true.
>
> ***
>
> The statements contained in <u>Exhibits A and B</u> violated 1692e(5) and in Exhibits A and B,
> violate § 1692e(5) and § 1692e(10) of the FDCPA, which prohibit
>
> *False or misleading representations*
>
> *A debt collector may not use any false, deceptive, or misleading representation or
> means in connection with the collection of any debt. Without limiting the general
> application of the foregoing, the following conduct is a violation of this section...*
>
> *(5) The threat to take any action that cannot legally be taken or that is not intended
> to be taken.*
>
> *(10) The use of any false representation or deceptive means to collect or attempt to
> collect any debt or to obtain information concerning a consumer.*

(emphasis in original)(Schultz Decl., Exhibit A-4, Paras. 15, 16).

As a result of the alleged FDCPA violations, plaintiff argues that Arrow has also violated Sections

1788.13 and 1788.17 of the Rosenthal Act. (Schultz Decl., *Id.*, Para. 17).

## III.    UNDISPUTED MATERIAL FACTS

Plaintiff received the disputed collection letters from Arrow on April 30, 2004 and July 8,

2004, respectively. (Schultz, Decl., *Id.*, Paras. 10, 11; *See also* Schultz Decl., Exhibit B-9, B-11, pp.

33, 39, 41). Plaintiff did not dispute that he owed the debt in which Arrow attempted to collect and

had no intentions of paying it. (Schultz Decl., Exhibit B-8, pp. 28, 29) Arrow offered plaintiff a 50%

---

3       *see* note 1, *supra.*

3                          05-CV-0171 (JAH) (RBB)

discount off of the total balance owed on the debt, as reflected in the disputed collection letters. (*See generally* Exhibits A and B to Plaintiff's First Amended Complaint).

Plaintiff read both letters. (Schultz Decl., Exhibit B-9, B-11, pp. 33, 41). After having read the letters, plaintiff did not believe that Arrow would/could report his debt to the credit bureaus. (*Id.*, pp. 36, 37, 42). Additionally, plaintiff was not at all confused by Arrow's July 2004 letter. (*Id.*, p. 42).

Arrow does not report debts to the credit bureaus that are over six years and nine months past the date of last payment. (Schultz Decl., Exhibit C-8, pp. 27). Additionally, Arrow trains its collectors to transfer debtor calls related to credit reporting inquiries to its Customer Care Department. (Schultz Decl., Exhibit C-18, C-19, pp. 69, 70). The Customer Care Department was created by Arrow to address any credit reporting questions that debtors may have. (Schultz Decl., Exhibit C-19, p. 70).

Arrow is provided with the account charge-off dates from the creditor at the time they acquire the debt. (Schultz Decl., Exhibit D-6, p. 21). Both Equifax and Experian delete any negative information from consumer credit reports at the point of seven years past the date of original delinquency. (Schultz Decl., Exhibits E, F). Moreover, federal law requires collection agencies, like Arrow, to report and maintain the original delinquency date. (Schultz Decl., Exhibit E) Approximately 50% of the Bally's accounts of which Arrow collected or attempted to collect were outside the applicable statute of limitations. (Schultz Decl., Exhibit C-7, pp. 22, 23, 24) The remaining accounts were within the applicable statute of limitations. (*Id.*) The Bally's accounts, including plaintiff's account, consisted of a nationwide portfolio for Arrow. (Schultz Decl., C-4, p. 13). The number of debtors with Bally's accounts for which Arrow sent a collection letter is nearly 40,000. (Schultz Decl., Exhibit B-4). Furthermore, out of those nearly 40,000 debtors, there is no evidence anywhere in the record (or alleged in plaintiff's complaint) that a single debtor had a debt of seven years or older appear on his/her credit report. (*See* record generally)

6086083v1 867705

## IV. ARGUMENT

### A.    Standard For Summary Judgment

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Fed. R. Civ. Proc. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of informing the Court of the basis of the motion and identifying the relevant evidence that demonstrates the absence of a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (*quoting Celotex*, 477 U.S. at 325.) ("...The moving party need only point out that there is an absence of evidence to support the nonmoving party's case.'"). Once the moving party meets this initial burden, a non-moving party, like Gonzales, must then take on the burden of showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324. However, in attempting to make such a showing, Gonzales may not rest upon mere allegations or denials, but must present evidence sufficient to demonstrate that there is a genuine issue for trial. "In short, summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party." *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410,414 (7th Cir. 2005) (affirming summary judgment on FDCPA claims). Here, the undisputed facts and evidence to date establish that plaintiff cannot survive summary judgment.

### B.    Summary Judgment Must Be Granted Because There Is No Evidence To Support Plaintiff's FDCPA Claims And Plaintiff Has Testified Contrary To The Claims He Has Asserted

#### (i)    Arrow's collection letters do not include a false or misleading representation nor threaten illegal or unintended action

1     Plaintiff claims that the conditional credit reporting language contained in Arrow's letter

2  violates the FDCPA and the Rosenthal Act. In his complaint, plaintiff specifically asserts that the

3  statements made in Arrow's letters are false or misleading. (Schultz Decl., Exhibit A, Para. 16).

4  However, despite the case's posture at this summary judgment stage, plaintiff has come forward with

5  absolutely no evidence to support these claims. Having failed to sufficiently establish his claims,

6  
7  plaintiff cannot prevail.

8     We recognize that on April 7, 2005, Arrow filed a Motion to Dismiss Plaintiff's Complaint,

9  pursuant to Rule 12(b)(6), arguing that plaintiff's complaint on its face, failed to establish that

10  Arrow's letter violated the FDCPA or the Rosenthal Act. Specifically, Arrow asserted that its letter

11  did not contain a false representation or threaten illegal or unintended action, nor was there anything

12  deceptive or misleading about the letter. The Court denied defendant's motion, holding that:

13  
14  > Because it can be inferred that the least sophisticated debtor with a non-reportable debt may
be misled to believe the debt would be reported to the credit bureaus when no such action
15  > may be taken, this Court finds the wording in the letters at issue, viewed in the light most
favorable to plaintiff, could be found violative of the Act.

16  (Court's Order on Defendant's Motion to Dismiss, Docket No. 6).

17     A motion to dismiss pursuant Rule 12(b)(6), however, tests the sufficiency of a plaintiff's

18  complaint on its face and requires the Court to assume the truth of the allegations and construe all

19  inferences from them in a light most favorable to the plaintiff. *Thompson v. Davis*, 295 F.3d 890,

20  895 (9th Cir. 2002); *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). The

21  consideration to be made by a court in ruling on a motion to dismiss is whether a plaintiff can prove

22  any set of facts that would entitle it to relief. *Fidelity Financial Corp.*, 792 F.2d at 1435.

23  
24     Conversely, a summary judgment motion tests the sufficiency of a plaintiff's claims in light

25  of all the evidence presented in the case. *See* Fed. R. Civ. Proc. 56(c). Under Rule 56(c), a court is

26  to review the record as a whole to determine whether a genuine issue of material fact exists. Fed. R.

27  
28  Civ. Proc. 56(c); *Durkin*, 406 F.3d at 414. A plaintiff facing summary judgment, unlike a motion

6086083v1 867705

1    dismiss, must present competent evidence to create a genuine issue of material fact. *State of Calif.*,

2    138 F.3d at 780-81. A Court considering a motion for summary judgment, contrary to a motion to

3    dismiss, is not required to make assumptions as to the factual allegations or construe inferences in

4    favor of the plaintiff. Arrow, consistent with Rule 56(c) now asks this Court to evaluate the evidence

5    (or lack of) purported to support plaintiff's claims and to decide the law as it relates to the collection

6    letter at issue. Even a cursory review of the evidence establishes that Arrow is entitled to summary

7

8    judgment because plaintiff has failed to present any evidence to support his claims.

9        Nearly a year since plaintiff filed his amended complaint and at the end of the discovery

10   period, the record reflects the following: (i) plaintiff has completely failed to present any evidence

11   that the collection letter illegally threatens any action or is misleading or deceptive to anyone,

12

13   including himself, and (ii) that Arrow does not have a policy to report debts such as plaintiff's debt

14   to the credit bureaus and in no way seeks to use credit reporting as a means to illegally collect debts.

15       There is no evidence of any person, including plaintiff, having been confused or misled by

16   the subject collection letter. In fact, plaintiff's deposition contains overwhelming testimony that

17   belies his claims. Unlike at the motion to dismiss stage of this case, the Court now has the benefit of

18   plaintiff's own testimony to appropriately determine that plaintiff cannot establish his claims against

19

20   Arrow.

21       In his complaint, plaintiff alleges that Arrow threatened to take action it was not legally

22   allowed to take and used false and deceptive means to collect unpaid debts by including in its letter,

23   the following sentence: "Upon receipt of the settlement amount and clearance of the funds, and if we

24   are reporting the account, the appropriate credit bureaus will be notified that this account has been

25   settled." (Schultz Decl., *see generally* Exhibit A). Plaintiff's testimony, however, squarely

26   contradicts these claims. Based on his work experience at Morgan Home Lending, Gonzales knew

27

28   that seven year old debt could not be reported and would be taken off of the credit report (Schultz

     Decl., Exhibit B, pp.21-23).   Plaintiff testified at his deposition that, even prior to his receipt of the

                                            7                    05-CV-0171 (JAH) (RBB)

disputed collection letter, he did not believe that Arrow could report his debt to a credit agency

(Schultz Decl, Exhibit B, pp. 28-29):

Q.   And when you were asking the question what was your intention? Were you asking them if you were legally required to pay?

A.   Yes.

Q.   You said you also asked them if they could report the debt?

A.   Yes.

Q.   And what did they say to that?

A.   They did not give a yes or no answer.

Q.   But you knew they couldn't?

A.   Yes. It was common sense to me that how - if I could get the debt taken off after seven years, how can they report a 13 year old debt if I can just have it taken off again. That was my basic understanding of it.[4]

Q.   So, based on your understanding of what you learned at Morgan, you didn't believe they could report the debt?

A.   That is correct.

Q.   But they wouldn't give you a straight answer when you asked them this?

A.   That is correct.[5]

---

[4]   This testimony also refutes plaintiff's reliance on *Kimber v. Federal Fin. Corp.*, 668 F.Supp. 1480, 1487 (M.D.Ala. 1987), also cited in the Court's Order on Defendant's Motion to Dismiss. To the extent that plaintiff suggests that "[f]ew unsophisticated consumers are aware of the statute of limitations," his testimony sufficiently establishes to the contrary and, accordingly, makes the *Kimber* court's comments inapplicable. Moreover, the *Kimber* case involved a defendant actually filing a lawsuit on a time-barred debt and making representations of same in the collection letter. There was no issue(s) of credit reporting involved in that case. The *Kimber* court never discussed consumers knowledge of credit reports and the statute of limitations regarding the reporting of debts.

Further, the *Kimber* court's statement regarding the awareness of unsophisticated consumers with respect to statutes of limitations was clearly dicta. The court ultimately found that, "the dispositive fact is that a debt collector could not legally prevail in such a lawsuit, and for the debt collector to represent otherwise is fraudulent." *Id.* at 1489. Consumer knowledge or sophistication was not at all the basis by which the *Kimber* court decided that case.

Additionally, *Kimber* was decided nineteen years ago. Consumers have much more knowledge and understanding in regards to credit and consumer-related issues now. For instance, about 60% of consumers have seen and understand their credit report. (Schultz Decl., Exhibit G-3, p. 11). The GAO also reported that "most consumers (around 90 percent) knew that they could dispute inaccurate information on their credit reports..." *Id* Unlike the opinions expressed by the *Kimber* court in 1987, consumers are now much more sophisticated about their credit.

[5]   Plaintiff claims that he contacted Arrow sometime after he called Bally's in October of 2003. However, Arrow's collector's notes show no such communication with plaintiff in or around October of 2003. (Exhibit D). Nonetheless, plaintiff does not allege that Arrow violated the FDCPA based on any telephone conversation, nor could he because any claims based on any alleged communications in October, 2003 are barred by the statute of limitations. *Fraenkel v. Messerli & Kramer, P.A.*, 2004 WL 1765309 (D.Minn. July 29, 2004).

6086083v1 867705

1    Q.    Did you ever tell them you were going to pay?

2    A.    No.

3    Q.    Did you have any intention of paying?

     A.    No.

*Id.* Plaintiff further testified that, despite the letters from Arrow and the language contained therein, he understood that he was under no obligation to pay the debt:

7    Q.    Okay. But did you understand that the outstanding balance they were talking about was $552.96?

8    A.    Yes.

9    Q.    And that you could pay $276.48 to settle the account?

10   A.    Yes.

11   Q.    But your understanding was that you didn't have to do that?

     A.    Correct.

12   Q.    And that was based on your conversation with them (Defendant) in October?

13   A.    Yes.

14   Q.    Where they said that they had no recourse against you?

15   A.    That is correct.

16   Q.    Was that also based on your understanding about the seven year old debt, your understanding about credit reports?

17   A.    Yes.[6]

18   Q.    So, when you got this letter, you didn't think you were under any obligation to pay?

19   A.    That is correct.

     Q.    So you didn't have any intention to pay?

20   A.    No.

21   In further contradiction to the claims made in his complaint, plaintiff also testified that he

22   knew that Arrow would not report his account to the credit bureaus:

23   Q.    Did you read the sentence where it says, "If we are reporting the accounts, the appropriate credit bureaus will be notified?"

24   A.    Yes.

25   Q.    And what did you think about that?

26   A.    On the April 30th letter, I knew that they couldn't report it.

27   Q.    So, you understood they wouldn't be reporting this amount?

28   ────────────
     [6]   *See* note 3, *supra*.

                        9                    05-CV-0171 (JAH) (RBB)

6086083v1 867705

1    A.    *That is correct.*

2    Q.    So, that sentence clearly didn't apply to your situation?

3    A.    *No.* (Emphasis added).

Moreover, plaintiff admitted that he was not confused or misled by Arrow's letters:

4

5    Q.    And you didn't believe that you owed that money?

     A.    That is correct.

6    Q.    And you didn't believe that they had any recourse against you to pay that money?

7    A.    That is correct.

8    Q.    Were you concerned that they would report this debt to your credit?

9    A.    No.

     Q.    To your credit report; I am sorry.

10   A.    No.

11   Q.    So, were you confused at all by this letter?

12   A.    **No I wasn't.** (Emphasis added).

13        As established by the above, plaintiff's own testimony contradicts and belies the claims made

14   in his complaint. Plaintiff cannot support his own allegations as alleged in his complaint, much less

15   represent a class of persons who purport to have similar claims. Plaintiff claims that Arrow's

16   collection letter threatened illegal action, but plaintiff testified that he knew Arrow would not and

17   could not report his debt to the credit bureaus, in addition to knowing that he was not obligated to

18   pay the debt. Plaintiff further claims that Arrow's letter was false or misleading, but plaintiff

19   unequivocally testified that he was not at all confused by the letter. It is inconceivable - if not absurd

20   - to consider how plaintiff can possibly assert his claims against Arrow, when he has effectively

21   proven that Arrow's collection letter is proper under the FDCPA. In short, plaintiff has voluntarily

22   demonstrated that his own claims are without merit.

23

24        Further fatal to plaintiff's claims is the fact that plaintiff has opted to interpret Arrow's

25   collection letters in a fashion that is atypical of the "least sophisticated consumer" as held by various

26   Courts. The "least sophisticated consumer" standard is objective, not subjective and is applied as a

27   matter of law. *Anderson v. Credit Collection Services, Inc.*, 322 F.Supp.2d 1094, 1096-97 (S.D. Cal.

28

6086083v1 867705

2004); *Lewis v. ACB Business Services, Inc.*, 135 F.3d 389, 400 (6th Cir. 1998); *Swanson v. Southern Oregon Credit Service, Inc.*, 869 F.2d 1222, 1227 (9th Cir. 1989). "Courts will generally presume that consumers read the letter carefully and in context." *Anderson*, 322 F.Supp.2d at 1099, n. 6.

The language of Arrow's letter ("if we are reporting the account..") is clearly a conditional statement to the debtor, and not a threat. The use of the word "if," in common sense context, precludes the notion of a "threat" as it is denotatively conditional. In *Wade v. Regional Credit*, 87 F.3d 1098 (9th Cir. 1996), the Ninth Circuit reviewed a debt collector's letter in light of allegations similar to those of plaintiff in this case. The relevant language of the collection letter in *Wade* was,

> WHY HAVEN'T WE HEARD FROM YOU? OUR RECORDS STILL SHOW THIS AMOUNT OWING.
>
> If not paid TODAY, it may STOP YOU FROM OBTAINING credit TOMORROW. PROTECT YOUR CREDIT REPUTATION.
>
> SEND PAYMENT TODAY.
>
> ***
>
> DO NOT DISREGARD THIS NOTICE. YOUR CREDIT MAY BE ADVERSELY AFFECTED.

*Wade*, 87 F.3d at 1099. The plaintiff debtor claimed that said language "threatened to take action that cannot legally be taken or that is not intended to be taken" and was false or deceptive. *Id.* at 1100. The Court disagreed and held that the language was "innocuous." *Id.* The Court opined:

> The body of the notice was informational, notifying Wade that failure to pay could adversely affect her credit reputation. There was no threat to sue. The least sophisticated debtor would construe the notice as a prudential reminder, not as a threat to take action

*Id.* Like in *Wade*, Arrow's collection letter provides the debtor with a purely innocuous and informational statement that "if" Arrow is reporting the debt, upon payment of the amount owed, Arrow will notify the appropriate credit bureaus. There is no explicit or implicit threat made. The use of the word "if," on its face, and even in lay terms makes the statement conditional and non-threatening. It is simply informative and amounts to a statement of a truism depending on the

6086083v1 867705

particular debt associated with the collection letter. *See Dunlap v. Credit Protection Ass'n, L.P.*, 419 F.3d 1011, 1012 (9th Cir. 2005)(*per curiam*)(holding that the debt collector's letter would "not impermissibly mislead the least sophisticated debtor into believing that his credit would be damaged by failure to pay..." and that the disputed language was "straightforward and non-threatening"); *Renick v. Dun & Bradstreet Receivable Mgmt. Servs.*, 290 F.3d 1055, 1056-57 (9th Cir. 2002)(per curiam)(upheld a collection letter under 1692g analysis); *Pressley v. Capital Credit & Collection Serv., Inc.*, 760 F.2d 922, 925 (9th Cir. 1985)(per curiam)("There was nothing in the notice itself or in any action of [the debt collector] that could be construed as 'abusive' or 'false, deceptive or misleading.' Rather it was a straightforward notice that repeated a demand for payment."); *Terran v. Kaplan*, 109 F.3d 1428 (9th Cir. 1997)(letter requesting that debtor telephone collection assistant did not overshadow the validation notice); *Hapin v. Arrow Financial Services*, 428 F.Supp.2d 1057 (N.D.Cal. April 24, 2006)("Please take this opportunity to help regain your financial future by contacting your account representative at our toll free number 800-807-3492" was not misleading or abusive); *see Khosroabadi v. North Shore Agency*, 2006 WL 2085245 (S.D.Cal July 19, 2006).

If Arrow is not credit reporting (in this case, because the account was older than six years and nine months), then the statement is not applicable. It is undisputed that Arrow never reported plaintiff's account and that plaintiff knew the account was not on his credit report because it was over seven years old. Plaintiff's bizarre reading of Arrow's letter is not indicative of the "least sophisticated consumer." *White v. Goodman*, 200 F.3d 1016, 1020 (7th Cir. 2000); *Wan v. Commercial Recovery Systems, Inc.*, 369 F.Supp.2d 1158 (N.D.Cal. May 19, 2005)(citations omitted)(The "FDCPA 'does not extend to every bizarre or idiosyncratic interpretation' of a collection notice but 'does reach a reasonable interpretation of a notice by even the least sophisticated.'). Nevertheless, plaintiff has proven his claims to be baseless by testifying that he was not confused by the letter because, among other reasons, he knew that Arrow could not report the account. Unlike the assertions made by plaintiff in response to Arrow's Motion to Dismiss,

1    plaintiff's own testimony now illustrates plaintiff's nonsensical interpretation of Arrow's collection

2    letters.  There is nothing illegal about Arrow's credit reporting procedures that can result in the

3    disputed collection letters being deemed violative of the FDCPA or the Rosenthal Act.

       (ii)    **Arrow's credit reporting procedures are wholly irrelevant to plaintiff's**
            **allegations, but nonetheless, prove that plaintiff cannot establish any**
            **claims against Arrow**

7        Plaintiff's complaint pertains exclusively to Arrow's collection letter and the language

8    contained therein that plaintiff claims is violative of the FDCPA.  (See Plaintiff's First Amended

9    Complaint, Paras. 14, 15, 16)  Thus, based upon plaintiff's own claims and allegations, the instant

10   matter is purely a letter case.  Despite this fact, plaintiff has gone to great lengths to put Arrow's

11   credit reporting procedures at issue during the discovery process. Even if plaintiff purports to now

12   claim that Arrow's collection procedures are relevant (which they are not), the evidence in this

13   regard shows that Arrow's credit reporting procedures are fair and reasonable and plaintiff's claims

14

15   still fail. Arrow does not believe that its credit reporting procedures are at all relevant to the issues

16   before the Court, but makes the following arguments in light of plaintiff's baseless attacks and

17   speculation on its procedures, to further establish that plaintiff's claims must fail.

18       In the deposition of Mr. Ishmael Robles, a former Arrow collection manager, Mr. Robles

19   testified that Arrow, as a policy and practice, does not report debts to the credit bureaus that were

20   older than six years and nine months. (Schultz Decl., Exhibit C-8, pp. 27). Furthermore, Arrow

21   collectors were trained not to discuss credit reporting with debtors with the exception of advising

22   debtors that debts over six years and nine months would not be reported. (Schultz Decl., *Id.* at 27).

23   Collectors who received from debtors additional credit reporting questions were trained to forward

24   these debtors to the company's Customer Care Department ("CC Department"). (Schultz Decl.,

25   Exhibit C-18, p.66, C-19, pp 70, 72, 73). Arrow's CC Department was specifically created to handle

26   questions related to credit reporting. (Schultz Decl, Exhibit C-19, pp. 70). Moreover, Arrow receives

27

28   charge-off dates from the original creditor upon acquisition and is required by federal law to report

                              13                   05-CV-0171 (JAH) (RBB)

and maintain the dates of original delinquency. (Schultz Decl., Exhibit D, p. 21) (Schultz Decl., Exhibits A, B).   If, in the unlikely event that Arrow would inadvertently send an account to a credit bureau to be reported with a charge-off date over seven years or more, the credit bureaus would not report the debt. (Schultz Decl., Exhibits A, B).   Thus, not only does Arrow have a practice not to report accounts that are outside of six years and nine months, but there is also a safeguard for any inadvertent requests for the reporting of seven year old debts. Even more telling is the fact that there is no evidence –either from plaintiff or any other debtor – that any account over seven years old appeared on any individual's credit report.   Nowhere in plaintiff's complaint, motion for class certification, response in opposition to Arrow's motion to dismiss, discovery or any another documents in this matter, is there <u>any</u> evidence in this regard.   In short, plaintiff's attempts at making the credit reporting procedures of Arrow an issue, result in further evidence that Arrow complies with the FDCPA and that plaintiff's claims must fail.

Accordingly, Arrow has established, based in no small measure to plaintiff's testimony, that no inference can be made that "the least sophisticated debtor with a non-reportable debt may be misled to believe the debt would be reported to the credit bureaus.." (Court's Order on Defendant's Motion to Dismiss, Docket No. 6). The record reflects the contrary -- that a least sophisticated consumer, apparently, plaintiff, is not misled or confused by Arrow's collection letter and is knowledgeable about the statute of limitations regarding the credit reporting of debts.

**C.      Plaintiff's Claims Under The Rosenthal Act Must Fail As They Are Strictly Derivative Of Plaintiff's Defective FDCPA Claims And Improperly Pled As A Class Action**

Plaintiff's claims under the Rosenthal Act are purely derivative of his failed FDCPA claims. Count II of Plaintiff's First Amended Complaint simply states:

Defendant violated Cal. Civ. Code § 1788 (as incorporated by Cal. Business & Professions Code § 6077.5), including but not limited to § 1788.13, and § 1788.17 by failing to comply with 15 U.S.C. § 1692 et seq., as set forth in the First Cause of Action. (Plaintiffs Complaint, Para. 31).

14                    05-CV-0171 (JAH) (RBB)

1   Count II contains no distinct operative facts to establish the Rosenthal Act claims apart from

2   those made in Count I. As established above, plaintiff cannot assert any valid FDCPA claims against

3   Arrow. Accordingly, the derivative Rosenthal Act claims must also fail.

**D.    Arrow is Entitled to Summary Judgment On Plaintiff's Class Action Claims
Because The Rosenthal Act Does Not Provide For Class Actions**

6   Plaintiff's Rosenthal Act ("The Act") claims also fail because they have been improperly

7   pled as a class action.[7] The Rosenthal Act does not specify relief for class actions. Instead, Section

8   1788.30 provides, "[a]ny debt collector who violates this title with respect to any debtor shall be

9
10  liable to that debtor *only* in an individual action." Cal. Civ. Code §1788.30(a)(emphasis added).

11  Although the legislature amended the Act to incorporate the remedies provided for in Section 1692k

12  of the FDCPA, the legislature did not similarly amend the Act to broaden the scope of Section

13  1788.30(a). As such, the Act continues to specify that liability shall be applied "only in an

14  individual." Cal. Civ. Code §1788.30(a). The Act's clear language on its face precludes legislative

15  history analysis to interpret the legislative intent. *Dal-Tile Corp. v. US.*, 424 F.3d 1286, 1291 (Fed.

16  Cir. 2005)("where the meaning of the statute is clear, that is the end of the matter and this court

17  should not examine the legislative history"); *Alexander v. Sandoval*, 532 U.S. 275, 288 (2001)(A

18  court derives the plain meaning of a statute from its text and structure); *Gibson v. Chrysler Corp.*,

19  261 F.3d 927, 939 (2001)(legislative history cannot overcome the plain meaning of the text absent

20  an obvious clerical error); *United States ex rel. Mistick PBT v. Housing Authority of City Pittsburgh*,

21  186 F.3d 376, 395 (3rd Cir. 1999)("The Supreme Court has repeatedly explained that recourse to

22  legislative history or underlying legislative intent is unnecessary when a statute's text is clear and

23
24  does not lead to an absurd result."). Here, the statute is clear - "[a]ny debt collector who violates this

25  title with respect to any debtor shall be liable to that debtor *only* in an individual action." Cal. Civ.

26

27  _____
    [7]   Arrow fully acknowledges the Court's granting of plaintiffs motion for class certification
    despite Arrow's arguments in opposition, however, the Act's clear language appears to
    support Arrow's position. Arrow now respectfully asks this Court to consider its arguments
    for purposes of summary judgment.

28

15                          05-CV-0171 (JAH) (RBB)

1   Code § 1788.30(a). Accordingly, the Rosenthal Act prohibits class actions and plaintiffs class action

2   claims pursuant to the statute must be dismissed.

3   **V.     CONCLUSION**

4          Plaintiff has failed to present any evidence that Arrow's collection letters threaten to take

5   action that cannot legally be taken or that is not intended to be taken. Similarly, the record is devoid

6   of any showing as to how or in what fashion Arrow's letters were false or misleading. Plaintiff has

7   unequivocally testified that he was not at all confused by the letters. Plaintiff's claims pursuant to the

8   Rosenthal Act must also fail because they are strictly derivative of plaintiff's defective FDCPA

9   claims. Accordingly, there is no genuine issue of material fact and Arrow is entitled to summary

10  judgment as a matter of law.

11

12

13

14  Dated:   August 11, 2006                          By: HINSHAW & CULBERTSON LLP
                                                       DAVID M. SCHULTZ
15

16

17                                                     David M. Schultz (Illinois SBN: 6197596)
                                                       222 N. LaSalle St.
18                                                     Suite 300
                                                       Chicago, IL 60601
19                                                     Telephone: 312-704-3000
                                                       Fax: 312-704-3001
20

21

22

23

24

25

26

27

28

6086083v1 867705

**PROOF OF SERVICE**

I am a resident of the United States of America, State of Illinois, over the age of 18 years and not a party to the within action. My business address is Hinshaw & Culbertson LLP, 222 N. LaSalle St., Suite 300, Chicago, Illinois 60601. On August 11, 2006, I served Arrow's Financial Services LLC's NOTICE OF MOTION AND DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, DECLARATION OF DAVID M. SCHULTZ IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, and MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION SUMMARY JUDGMENT by transmitting a copy via email on this date from jweller@hinshawlaw.com to the attorneys listed below and by placing the document in a sealed envelope with postage thereon fully prepaid in the United States mail in Chicago, Illinois to the addresses set forth below.

Elizabeth J. Arleo, Esq.
Arleo Law Firm, PLC
850 Main Street, Suite 201
Ramona, CA 92065
elizabeth@arleolaw.com
(760)789-8000 (main)
(760)789-8081 (fax)

O. Randolph Bragg
The Law Offices of Horowitz,
Horwitz Horwitz & Associates
25 E. Washington Street, Suite 900
Chicago, IL 60602
(312)372-8822 (main)
(312)372-1673 (fax)

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct. Executed on August 11, 2006 in Chicago, Illinois.

Jennifer W. Weller